Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 21 2014, 10:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RICHARD WALKER**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEREMY LYN DAVIS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 48A02-1307-CR-670 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1010-FC-613

**May 21, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jeremy Lyn Davis ("Davis") was convicted by a jury in Madison Circuit Court of Class C felony battery by means of a deadly weapon and was sentenced to seven years executed in the Department of Correction. Davis appeals and argues that (1) the trial court abused its discretion in sentencing Davis and (2) his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

**Facts and Procedural History**

On the evening of October 24, 2010, Mark Tulowitzky ("Tulowitzky") was sitting on a rock near the van in which he lived. Davis approached Tulowitzky on his bicycle, swore at him, and swerved the bicycle around Tulowitzky towards the van. Davis then "took out a stick, a white stick 'bout three feet long" and attempted to swing the stick at the windshield of the van. Tr. p. 113. Before he could do so, however, Davis collided with the hood of the van and fell off of his bicycle. Believing that Davis intended to break the windows of his van, an unarmed Tulowitzky charged at Davis and the two men wrestled to the ground. Davis, who was on top of Tulowitzky, then used a screwdriver to stab Tulowitzky in the throat.

A passerby, Brian King ("King") stopped his car at the scene when he saw Davis crash into Tulowitzky's van. King approached the two men while Davis was still on top of Tulowitzky. Davis told King that he had stabbed Tulowitzky, and King called the police. When the police arrived at the scene, Davis admitted to officers that he had stabbed Tulowitzky. Tulowitzky was transported to a local hospital where he spent two days in the intensive care unit.

Four days later, October 28, 2010, the State charged Davis with Class C felony battery by means of a deadly weapon. On January 16, 2013, Davis filed a notice of mental disease or defect and the trial court appointed two mental health experts, Dr. Frank Krause and Dr. Susan Anderson, to examine Davis and file written reports as to Davis's competency to stand trial. After evaluating Davis, Dr. Krause determined that Davis suffered from depression, cannabis dependence, and borderline personality disorder, but was competent to stand trial. Dr. Anderson concluded that Davis suffered from schizoaffective disorder and provisional marijuana use. In her report, Dr. Anderson stated:

> [Davis] thinks he is going to be released in March at his hearing due to a dream he had a couple of years ago about it. For that reason, that is his unrealistic and most likely delusional idea about what is going to happen, he is not competent to stand trial at this time.

Appellant's App. p. 112. The trial court held a competency hearing on April 22, 2013, at which it found Davis competent to stand trial.

A two-day jury trial began on July 9, 2013. At the conclusion of the trial, the jury found Davis to be guilty as charged. The trial court held a sentencing hearing on July 15, 2013. After hearing evidence, the trial court stated:

> Mr. Davis, I hope you can appreciate in one sense how very lucky you are. Had your screwdriver that you used to stab the victim in this case been a little bit off to the left, you could have killed the victim here as opposed to simply injuring him seriously and this would be a murder case.
> &ast; &ast; &ast;
> I do see that there's significant aggravation here. The defendant does have a prior legal history. The defendant has exhibited very poor behavior while in the custody of the sheriff which has resulted in the loss of goodtime credit which I referred to earlier. In terms of mitigation, I can find no mitigation on the record either. Well, I take that back. I will find it to be a

mitigating factor that the defendant does suffer from a mental health condition that contributed to the conduct that was charged in this case. But there is no expression of remorse. There was no guilty plea. So I can not find those things to be mitigating factors in the case. I do, therefore, find that the mitigation is significantly outweighed by the aggravation here.

Tr. pp. 273-74.

After the sentencing hearing, the trial court ordered Davis to serve a term of seven years executed in the Department of Correction.

Davis now appeals his sentence.

## I. Sentencing Discretion

Davis claims that the trial court abused its discretion in "fail[ing] to give adequate weight to Davis' mental health issues at the time of sentencing." Appellant's Br. at 9. Sentencing decisions rest within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. Id. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Id. at 491.

A trial court may abuse its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. Id. at 490-91. Importantly for this case, a trial court cannot be said to

4

abuse its discretion for failing to properly weigh aggravating and mitigating factors. Id. at 491.

Here, the trial court entered a sentencing statement that included both aggravating and mitigating factors that were supported by the record and, after weighing the factors, determined that the aggravating factors outweighed the mitigating factors. Therefore, Davis's claim that the trial court failed to give his mental health problems adequate weight is not available on appeal.

## II. Appellate Rule 7(B)

Davis next argues that his seven-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In our review of sentences under this rule, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011), trans. denied.

Although we have the power to review and revise sentences, the principal purpose of our review should be to attempt to level the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, not to achieve what we perceive to be a "correct" result in each case. Fernbach v. State,

5

954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), <u>trans. denied</u>. Our review under Appellate Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." <u>Id</u>. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. <u>Fonner v. State</u>, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). And it is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. <u>Childress v. State</u>, 848 N.E.2d 1073, 1080 (Ind. 2006)

With regard to the nature of the offense, a crime's advisory sentence is the starting point our legislature has selected as an appropriate sentence for the offense committed. <u>Anglemyer</u>, 868 N.E.2d at 494. The advisory sentence for a Class C felony is four years with a sentencing range between two and eight years. Ind. Code § 35-50-2-6.

Initially, we note that Davis does not make any cogent argument that his sentence is inappropriate in light of the nature of the offense. Accordingly, he has waived appellate review of his sentence under Indiana Appellate Rule 7(B). <u>See</u> <u>Williams v. State</u>, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (holding that the defendant waived Rule 7(B) argument where he did not present a cogent argument that his sentence was inappropriate in light of his character). But waiver notwithstanding, Davis still cannot prevail. Davis's sentence, which is one year below the maximum sentence allowable for a Class C felony, is not inappropriate in light of the nature of the offense or the character of the offender.

Considering the nature of Davis's offense, we note the incredible violence of Davis's attack of Tulowitzky, which culminated in Davis stabbing an unarmed Tulowitzky in the throat with a screwdriver. We further note that Davis's attack was prompted by Tulowitzky's efforts to protect the van in which he lived and which Davis had already attempted to damage.

With regard to the character of the offender, Davis emphasizes that this conviction was his first. Although Davis does not raise it, we also observe the presence of Davis's mental health problems at the time of the offense. However, even in light of Davis's lack of criminal history prior to the present offense and his mental health condition, we conclude that the sentence imposed by the trial court was not inappropriate in light of Davis's character. Approximately two months after Davis's attack on Tulowitzky, Davis pleaded guilty to battery by body waste. About a year after the attack, Davis pleaded guilty to criminal mischief. And, while in custody, Davis behaved so poorly that his good time credit was removed.[1]

For these reasons, we conclude that Davis has not met his burden of persuading us that his sentence is inappropriate in light of both the nature of his offense and his character. Despite the valid mitigating circumstance of Davis's poor mental health condition that condition was noted by the sentencing court as a mitigating factor, and the egregiousness of Davis's offense warrants the sentence imposed.

---

[1] Davis's good time credit was removed after Davis damaged jail property and failed to keep his cell area clean.

**Conclusion**

Davis's claim that the trial court abused its discretion by failing to properly weigh aggravators and mitigators is unavailable on appeal. Furthermore, we conclude that, waiver notwithstanding, Davis's sentence is not inappropriate in light of the nature of Davis's offense and his character.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.