## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2015, 7:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harold Randy Hughes,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 9, 2015<br><br>Court of Appeals Case No.<br>45A03-1502-CR-56<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Salvador Vasquez, Judge<br><br>Trial Court Cause No.<br>45G01-1309-FB-82 |

**Mathias, Judge.**

[1]     Harold Randy Hughes ("Hughes") pleaded guilty in Lake Superior Court to Class C felony sexual misconduct with a minor. He was ordered to serve seven

and one-half years in the Department of Correction. Hughes appeals and argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] Hughes, who was sixty years old, engaged in sexual misconduct with fourteen-year-old N.J. Hughes met N.J. at a festival in Dyer, Indiana during the summer of 2013. Shortly thereafter, they began communicating via text messages and telephone calls. On August 10, 2013, Hughes arranged to pick N.J. up, and they returned to Hughes' residence where Hughes engaged in sexual deviate conduct with N.J.

[4] N.J.'s guardian tracked her to Hughes' residence through her cell phone. Hughes refused to allow N.J.'s guardian into the residence. Hughes told her guardian to get off of his property. N.J.'s guardian returned to his vehicle and called the police.

[5] When the police arrived, Hughes told the officer that he and N.J. had done nothing wrong and he was simply showing her how to use Facebook. Police officers then entered Hughes' residence, located N.J. in Hughes' bedroom, and returned her to her guardian.

[6]     A no-contact order was entered against Hughes naming N.J. as the protected person. One week after N.J. was found at Hughes' residence, Hughes violated the protective order and met N.J. in a park.

[7]     In September 2013, Hughes was charged with Class B felony sexual misconduct with a minor. Hughes later agreed to plead guilty to Class C felony sexual misconduct with a minor.

[8]     The sentencing hearing was held on January 16, 2015. At the hearing, the State entered portions of N.J.'s diary as an exhibit. In the diary, N.J. described numerous sex acts between herself and Hughes. Also, N.J.'s guardian testified to the negative effect Hughes' criminal conduct has had on his family and N.J., who was residing in a group home on the date of the sentencing hearing.

[9]     Hughes argued that he should be given a minimum sentence and claimed that fourteen-year-old N.J. was the aggressor in her relationship with sixty-year-old Hughes. Tr. p. 45. Furthermore, Hughes argued he just enjoyed the attention from N.J.; Hughes' criminal sexual conduct has not had an impact on N.J.; and that N.J. "still indicates that she wants to have a relationship with him." Tr. pp. 51-52. Hughes also cited medical issues and the assistance he provides to his mother as reasons to impose a minimum sentence.

[10]    Before imposing his sentence, the trial court observed that Hughes is "extremely manipulative" and found his "character to be dishonest." Tr. pp. 59-60. The court also noted Hughes was on probation for Class D felony operating while intoxicated when he committed this offense, and he was arrested for invasion of

privacy for violating the no-contact order protecting N.J. The court also declined to find Hughes' guilty plea to be a significant mitigating circumstance. Thereafter, the trial court ordered Hughes to serve a seven-and-one-half-year sentence executed in the Department of Correction. Hughes now appeals.

## Discussion and Decision

Hughes argues that his seven-and-one-half-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Even if a trial court acted within its statutory discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Trainor v. State*, 950 N.E.2d 352, 355–56 (Ind. Ct. App. 2011), *trans. denied* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007)). This authority is implemented through Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

Still, we must and should exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to level the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to

achieve what we perceive to be a "correct" result in each case. *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied* (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)).

[13] Under Appellate Rule 7(B), the appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

[14] Hughes' seven-and-one-half-year sentence is six months less than the maximum eight-year sentence allowed for a Class C felony. *See* Ind. Code § 35-50-2-6(a) ("A person who commits a Class C felony (for a crime committed before July 1, 2014) shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years").

[15] First, we conclude that the nature of Hughes' offense is particularly heinous. Hughes was sixty years old when he committed sexual misconduct with fourteen-year-old N.J. After meeting N.J. at a festival, he communicated with her via numerous text messages and phone calls. On August 10, 2013, he arranged to pick her up and take her to his residence where he engaged in sex acts with the child. When N.J.'s guardian located her at Hughes's residence, Hughes ordered her guardian off of his property. Police officers were required to intervene to remove N.J. from Hughes' home.

[16] At sentencing, the trial court observed that Hughes was manipulative and dishonest. He also demonstrated disregard for the law by violating a no-contact order against the victim in this case, which resulted in an invasion of privacy charge that was pending against him on the date of sentencing. Also, he was on probation for Class D felony operating while intoxicated when he committed this offense. Hughes also has a 2005 Class D felony conviction for operating while intoxicated and two misdemeanor convictions for the same conduct.

[17] Although pleading guilty to the charged offense generally reflects well on the defendant's character, in this case the trial court assigned only minimal mitigating weight to Hughes' guilty plea. The record reflects that Hughes' decision to plead guilty was likely a pragmatic one and not a true expression of remorse. As the trial court noted, the evidence against Hughes supported the Class B felony sexual misconduct charge, the original charge in this case, and when he agreed to plead guilty to the C felony, Hughes's maximum sentence decreased from twenty years to eight years.

[18] For all of these reasons, we conclude that Hughes' seven-and-one-half-year sentence is more than appropriate in light of the nature of the offense and the character of the offender.

[19] Affirmed.

Baker, J., and Bailey, J., concur.