## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2018, 6:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William T. Myers
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon M. Newell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 28, 2018

Court of Appeals Case No.
27A04-1708-CR-1850

Appeal from the Grant Superior
Court

The Honorable Jeffrey Todd,
Judge

Trial Court Cause No.
27D01-1609-F2-15

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Brandon Newell was convicted of burglary, a Level 2 felony; armed robbery and criminal confinement, both Level 3 felonies; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and intimidation and battery by means of a deadly weapon, both Level 5 felonies. The jury also found Newell to be an habitual offender. The trial court sentenced Newell to a total of fifty years, thirty years for the Level 2 burglary conviction, enhanced by twenty years for the habitual offender adjudication. The sentences for the remaining crimes were ordered to be served concurrently with the Level 2 felony sentence. Newell appeals, raising the sole issue of whether his sentence is inappropriate in light of the nature of his offense and his character. Concluding Newell's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] On September 24, 2016, Jesus Martinez was on his front porch with his two-year-old son when a person, later identified as Newell, approached him and asked him for a cigarette. After he provided Newell with a cigarette, Martinez turned around and saw that Newell "ha[d] my son and a pistol." Transcript, Volume 2 at 54. Newell told Martinez to go in the house and said "he was gonna kill me and my son" if Martinez did not comply. *Id.* at 58. After they entered the house, Newell struck Martinez in the head with the pistol and took his cell phone and wallet. Newell again threatened to kill Martinez and his son if Martinez did not give him more money. Eventually, Newell threw

Martinez's son back to him, threatened to kill him if he called the police, took Martinez's bike off the front porch, and rode off. Martinez chased Newell in his car and Newell subsequently abandoned the bicycle and ran off on foot. Martinez saw a Chrysler 300 speed down the street, stop, and pick up Newell. Martinez chased this vehicle until Newell got out and ran behind a house. Martinez then returned home and eventually contacted police. Martinez later identified Newell from a photo array assembled by police.

[3]     The State charged Newell with burglary, armed robbery, criminal confinement, unlawful possession of a firearm by a serious violent felon, intimidation, and battery by means of a deadly weapon. The State also alleged Newell was an habitual offender. A jury found him guilty of all charges and also found him to be an habitual offender. At sentencing, Newell asked to be placed in a Purposeful Incarceration program in order to prepare him for life after incarceration. With respect to sentencing, the trial court stated:

> As far as the aggravating circumstances in this case . . . one would be the Defendant's prior criminal and juvenile history as set forth in the Pre-Sentence Investigation Report. All of it is concerning to the Court, but most relevant, related and troubling are the Defendant's multiple burglaries as a juvenile, two armed robbery convictions in 2002, battery resulting in serious bodily injury in 2006. Soon after being released from incarceration in October of 2009, he committed another armed robbery in January of 2011 and was adjudicated to be an habitual offender. Then less than fifty days after his release from the Department of Corrections [sic] in August of 2016, he committed Counts 1 through 6 in the case before the Court today. Also troubling to the Court is the fact that this [is] the Defendant's second

adjudication as an habitual offender. The criminal history amounts to almost a twenty year pattern of violence, use of weapons, threats, and forcibly taking other people's property. . . . Second aggravating circumstance is the victim of Count 3 was [a] child less than three years of age. Third aggravator is the remaining counts other than Count 3, were knowingly committed in the presence of this same small child. The fourth aggravating circumstance is that at the time the Defendant committed these offenses, he was on probation in two different cases for separate armed robberies.[1] I do not find that there are any mitigating circumstances in this case.

[4] Tr., Vol. 4 at 101-03. The trial court sentenced Newell to thirty years executed for burglary enhanced by twenty years for the habitual offender finding, sixteen years for armed robbery, sixteen years for criminal confinement, twelve years for unlawful possession of a firearm by a serious violent felon, six years for intimidation, and six years for battery by means of a deadly weapon, all to be served concurrently with the burglary sentence for an aggregate sentence of fifty years. Newell now appeals his sentence.

# Discussion and Decision

## I. Standard of Review

[5] Indiana Appellate Rule 7(B) provides, "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the

---

[1] Newell's probation in these two cases was revoked and the trial court also sentenced him for the probation violations during the sentencing hearing in this case.

Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Whether a sentence is regarded as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). A sentence review under Indiana Appellate Rule 7(B) is "very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). This "deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The defendant bears the burden to persuade this court that the sentence is inappropriate. *Sandleben v. State*, 29 N.E.3d 126, 136 (Ind. Ct. App. 2015), *trans. denied*. The analysis is "not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley*, 972 N.E.2d at 876 (quotation omitted).

## II. Inappropriate Sentence

[6] Newell does not challenge the length of the sentence imposed by the trial court. Instead, he challenges the sentence as inappropriate because it "failed to include a recommendation for purposeful incarceration . . . ." Brief of Appellant at 8. Purposeful Incarceration is a project where the Department of Correction ("DOC") "works in collaboration with Judges who can sentence chemically addicted offenders and document that they will 'consider a sentence

modification' should the offender successfully complete [a] . . . Therapeutic community." Therapeutic communities "provide intensive substance abuse treatment . . . that hold the offenders highly accountable." *Purposeful Incarceration*, https://www.in.gov/idoc/2798.htm (last visited Mar. 15, 2018).

[7] The place where a sentence is to be served is subject to review under Rule 7(B). *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). However, "it will be quite difficult for a defendant to prevail on a claim that the placement of his or her sentence is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). Newell does not challenge his placement in the DOC, but rather challenges the lack of a *recommendation* that he is eligible for the Purposeful Incarceration program in the DOC. This underscores that the trial court cannot order the DOC to place an offender in the Purposeful Incarceration program, but can only alert the DOC to appropriate candidates. *See Purposeful Incarceration Details*, http://www.in.gov/idoc/2798.htm (last visited Mar. 15, 2018) ("The Courts communicate with the [DOC] that this offender is a [Purposeful Incarceration] offender."). The program then assesses Purposeful Incarceration offenders and only admits persons who meet the substance abuse admission criteria. *Id.* The record does show that Newell asked the trial court to recommend purposeful incarceration, but does not establish that he is a chemically addicted offender. Instead, Newell argues that "[i]n light of his character as an individual who has been incarcerated for a long period of time of his life without the proper education on how to live in free society this should have been viewed as an *appropriate* case of recommending Purposeful

Incarceration." Brief of Appellant at 11 (emphasis added). On appeal, however, we do not decide "whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley*, 972 N.E.2d at 876 (quotation omitted). Although the trial court did not specifically address Newell's request for Purposeful Incarceration, we have stated that "it is absurd to conclude that the General Assembly could have intended that *all* DOC inmates be entitled to substance abuse treatment regardless of whether they in fact suffer from substance abuse." *Cohn v. Strawhorn*, 721 N.E.2d 342, 348-49 (Ind. Ct. App. 1999), *trans. denied*. Having failed to show that he meets the criteria for recommendation to the program, Newell has failed to show that his placement in the DOC *without* such recommendation is inappropriate.

[8] More generally, Newell does little to explain why his sentence is inappropriate in light of the nature of his offense or his character. For the purpose of 7(B) review, "[t]he nature of the offense is found in the details and circumstances of the commission of the offense." *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015), *trans denied*. The record reveals that in carrying out these offenses, Newell held a gun to the head of a two-year-old child, threatened to murder the child and his father, and hit the child's father in the head with a gun, causing him to bleed, while still in the presence of the child. At sentencing, the trial court noted the involvement of the child in two of the five aggravating factors. We also believe Newell's conduct to be particularly egregious in light of the involvement of a young child. Therefore, we cannot say that Newell's sentence is inappropriate in light of the nature of his offenses.

In considering the character of the offender, it is "shown by the offender's life and conduct." *Id.* Newell has an extensive criminal history as both a juvenile and as an adult, including multiple convictions for armed robbery. At sentencing, the trial court noted that Newell's criminal history "amounts to almost a twenty year pattern of violence, use of weapons, threats, and forcibly taking other people's property." Tr., Vol. 4 at 102. Newell was out of prison for less than two months before committing this armed robbery, while still on probation for two other offenses of armed robbery. Considering Newell's criminal history, we cannot say his fifty-year sentence is inappropriate in light of the nature of his character.

Newell has not met his burden of convincing us that his placement in DOC without a Purposeful Incarceration recommendation is inappropriate because he has failed to show that he qualifies as a candidate for the program in the first place. As for the length of Newell's sentence, it is not inappropriate in light of the nature of Newell's crimes and his character.

# Conclusion

Newell's sentence is not inappropriate in light of the nature of the offense and his character. We therefore affirm his sentence of fifty years to be executed in the Department of Correction.

Affirmed.

Crone, J., and Bradford, J., concur.